458

No. 16,940.

MEDICAL ARTS BUILDING *v*. ERVIN ET AL.
(257 P. [2d] 969)

Decided May 11, 1953.

Mr. SIDNEY P. GODSMAN, for plaintiff in error.

Mr. MAX D. MELVILLE, Mr. EDWARD E. PRINGLE, Mr. GAIL L. IRELAND, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

WE SHALL herein refer to plaintiff in error as Medical, and defendants in error by name.

The case involves the validity of a mechanic's lien claim filed by Ervin for services he rendered as an architect for Medical, and Ervin's assignment to Judd of all his rights to the lien claim.

Medical purchased an apartment building in Denver for the purpose of remodeling it into a modern structure to house offices of doctors and dentists. The building was subject to a trust deed to one Jane A. Wurgler. Ervin, by a written contract dated October 1, 1947, was employed by Medical to draw plans and specifications for the remodeling. He was not to supervise the remodeling work. Ervin's compensation was to be eight and one-half per cent of the "cost of the work." He proceeded with the work and completed his plans and specifications. He filed his lien claim on October 2, 1948, and commenced the instant action to foreclose it on February 16, 1949.

Jane A. Wurgler brought action to foreclose her deed of trust. Judgment and decree in said suit was entered as prayed for, and the Wurgler trust deed lien was adjudged superior to the lien claim of Ervin. Judd purchased the Jane A. Wurgler judgment and bid in the property at the sheriff's sale for $25,996.07 on October 1, 1949. Following the foreclosure decree in favor of Jane A. Wurgler, Ervin assigned his lien claim to Judd, who was made a joint plaintiff with Ervin in the instant action.

Medical redeemed from the sheriff's sale in March, 1950. Thereafter it tendered Judd $3,500 and demanded from him an assignment of the Ervin lien claim. The tender was refused, and Medical counter-claimed against Judd, demanding a decree in its favor that Judd assign the Ervin lien claim to it.

Medical, by its answer, denied liability to Ervin, and set up affirmatively that Ervin's architectural services had not been completed; that said services were erroneous, and not those contracted for; that Judd acquired no interest by virtue of Ervin's assignment to him; that Ervin was employed to draw plans and specifications for a remodeling job to cost not to exceed $75,000; that his plans called for an expenditure of $200,000; and that Ervin's failure to comply with the $75,000 restric-

tions, caused Medical to make expenditures beyond its expectations and financial ability, to its damage in the sum of $57,500; that Ervin had assigned his lien claim to Judd for a consideration of $3,500, and that Judd was estopped to claim more than that amount.

Trial was to the court without a jury. Findings were for Judd; judgment for $11,750 was entered in his favor, together with a decree directing a sale of the property to satisfy his lien. Medical brings the case here by writ of error, specifying several points. We will consider those which go to the validity of Ervin's mechanic's lien claim; its assignment to Judd; Medical's counterclaim against Ervin, and whether Judd was bound to accept the tender by Medical of $3,500 and execute an assignment of the Ervin lien to Medical.

The record discloses that while Ervin was preparing the plans and specifications, Medical went ahead with the work of removing partitions, windows, etc. from the building it owned, and continued this work until about September 13, 1948, when, for reasons not necessary to detail here, it abandoned all effort in connection with the undertaking.

The findings and conclusions of the trial court covered every phase of the case, and careful review of the evidence discloses that its findings are amply supported in every particular by the evidence.

Was the lien statement filed in apt time? The last work done by Ervin was on either August 13th or August 15, 1948, and from the evidence, the trial court concluded that no further work was done on the structure after that time. Ervin filed his lien statement October 2, 1948, and instituted the suit to foreclose it on February 16, 1949. He filed his notice of lis pendens on March 3, 1949.

Under section 23, chapter 101, '35 C.S.A., "cessation from labor for thirty days upon any unfinished contract or upon any unfinished building, improvement, * * * shall be deemed equivalent to a completion thereof."

Hence, Ervin had three months from the "cessation of labor" on the building to file his lien statement. Having filed it on October 2, 1948, he was within the statutory time. He filed the suit to foreclose his lien, and recorded his lis pendens notice within the six-months period limited by the statute. *Boise-Payette Lumber Co. v. Longwedel,* 88 Colo. 233, 295 Pac. 791. Ervin complied with the statutory requirements.

Medical's objection to the assignment from Ervin to Judd is based upon a provision in the original contract forbidding an assignment of the contract by Ervin without its consent. It relates solely and entirely to the services to be performed by Ervin, and not as the trial court observed, "to the right of action after breach of the contract." We must conclude that the assignment to Judd was valid. *Savings Society v. Welch,* 12 Colo. App. 195, 55 Pac. 202.

By Medical's evidence, it endeavored to prove that Ervin contracted to furnish plans and specifications for a $75,000 remodeling job. This issue was resolved against it by the trial court, and the evidence is abundant that Ervin made no such commitment. The trial court found that the plans and specifications prepared by Ervin complied in all particulars with the provisions of the contract of employment, and that he was not liable for any loss Medical claimed to have sustained. Among the findings of the trial court is the following: "There was some testimony that during a preliminary discussion, at a meeting of the officers and stockholders, that the estimated cost of the remodeling of the building should not exceed the sum of $75,000. There is no testimony to indicate that that information was ever conveyed to the plaintiff, Ervin."

It also would be observed that in the written contract under which Ervin rendered his services there is no reference to a seventy-five thousand dollar cost limitation. The contract is plain and unambiguous. The parol evidence introduced by Medical in an attempt

to establish such cost limitation was inadmissable. *Light v. Rogers,* 125 Colo. 209, 242 P. (2d) 234. However, this issue was resolved against Medical by the trial court. Medical's counterclaim against Ervin failed.

Counsel for Medical asserts that Judd is equitably bound to assign to it the Ervin lien claim for thirty-five hundred dollars, the amount Judd paid Ervin therefor. We cannot agree. There is no evidence in the record even remotely suggesting that Judd, when he used his money to make the purchase of the Ervin lien, did so for Medical's use or benefit, or that he agreed with it that if it redeemed from the sheriff's sale under the Wurgler trust deed he would assign the Ervin lien for any sum less than its face amount, with interest. Judd claimed no right to redeem as successor in interest to Medical. He did nothing to prevent Medical from redeeming from the sheriff's sale held pursuant to the foreclosure of the Wurgler trust deed. He was under no duty to Medical, and its tender was unavailing. Medical had redeemed from the foreclosure sale and had title to the real property, subject to the Ervin lien claim, the validity of which had not then been determined.

We have considered the other specifications of error and find them without merit.

The judgment is affirmed.

MR. JUSTICE ALTER not participating.